Todd D. Gardner (#5953)
BATEMAN, GOODWIN & GARDNER
4120 South Highland Drive, Suite 100
Salt Lake City, Utah 84124
Telephone: (801) 424-3451
Facsimile: (801) 424-3429
Attorney for Plaintiffs

FILED
U.S. DISTRICT COURT

2007 MAY -1  A 11: 28

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SHEILA LEAFTY, individually and as The parent and legal guardian of BRAYDEN BLANDA, a minor | **AMENDED COMPLAINT** |
| Plaintiffs, | Case No. 2:06CV00787 |
| vs. | |
| | Judge Bruce S. Jenkins |
| NATURAL SELECTION FOODS, LLC; A California corporation; NATURAL SELECTION FOODS MANUFACTURING, LLC, a California corporation; DOLE FOOD COMPANY, INC., a California corporation; and MISSION ORGANICS, LP. LLC, a California corporation, | Jury Trial Demanded |
| Defendants. | |

COMES NOW the plaintiffs, SHEILA LEAFTY, individually and as parent and legal guardian of BRAYDEN BLANDA, a minor, by and through their attorneys of record and allege as follows:

## I. **PARTIES**

1.1     The plaintiffs are residents of Murray, Utah. The plaintiffs reside within the jurisdiction of this Court.

1.2     The defendant Natural Selection Foods, LLC, is a corporation organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Natural Selection Foods, LLC, is, therefore, a foreign corporation and not a resident of the State of Utah. Further, the defendant Natural Selection Foods, LLC, is authorized to do, and in fact does, business in the State of Utah.

1.3     The defendant Natural Selection Foods Manufacturing, LLC, is a company organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Natural Selection Foods Manufacturing, LLC, is, therefore, a foreign company and not a resident of the State of Utah. Further, the defendant Natural Selection Foods Manufacturing, LLC, is authorized to do, and in fact does, business in the State of Utah.

1.4     The defendant Dole Food Company, Inc. ("Dole") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business, on information and belief, in the State of California. The defendant Dole is, therefore, a foreign corporation and not a resident of the State of Utah. Further, the defendant Dole is authorized to do, and in fact does, business in the State of Utah.

1.5     The defendant Mission Organics, LP/LLC ("Mission Organics") is a company organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Mission Organics

is therefore a foreign company and not a resident of the State of Utah. Defendant Mission Organics provides its products to regional and national distributors, including Natural Selection Foods, LLC; and Natural Selection Foods Manufacturing, LLC with the expectation that those entities will distribute Mission Organics' spinach to a multi-state area, including Utah. Mission Organics has thus conducted business in Utah and purposely reaped the benefits of the laws of Utah.

## II. JURISDICTION AND VENUE

2.1   This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendants each have certain minimum contacts with the State of Utah such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2.2   Venue in the United States District Court for the District of Utah is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiffs' claims and causes of action occurred in this judicial district, and because defendants Natural Selection were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. GENERAL ALLEGATIONS

### The Outbreak

3.1   *E. coli* O157:H7 outbreaks associated with lettuce or spinach, specifically the "pre-washed" and "ready-to-eat" varieties sold under various brand and trade names, are by no means a new phenomenon. In October 2003, 13 residents of a California retirement center were sickened and 2 died after eating *E. coli*-contaminated "pre-washed" spinach. In September 2003,

nearly 40 patrons of a California restaurant chain became ill after eating salads prepared with bagged, "pre-washed" lettuce. In July 2002, over 50 young women were stricken with *E. coli* at a dance camp after eating "pre-washed" lettuce, leaving several hospitalized, and 1 with life-long kidney damage. The Center for Science in the Public Interest found that of 225 food-poisoning outbreaks from 1990 to 1998, nearly 20 percent (55 outbreaks) were linked to fresh fruits, vegetables or salads.

3.2     Even more recently, though—September 2005—a large E. coli O157:H7 outbreak associated with pre-washed lettuce occurred amongst residents of Wisconsin, Minnesota, and Oregon. Health authorities involved in the investigation of the outbreak estimated that as many as 244,866 bags of potentially contaminated lettuce made it to market. Many people were critically injured.

### Brayden Blanda's Injuries

3.3     Sheila Leafty purchased packaged spinach manufactured by defendants Natural Selection on several occasions during August 2006, and Brayden Blanda consumed the spinach in salads throughout August 2006, including between August 22 and 27, 2006.

3.4     Brayden Blanda's gastrointestinal symptoms began on Tuesday, August 29, 2006. His mother, Sheila Leafty, treated the frequent bouts of diarrhea with over the counter anti-diarrheal medications.

3.5     The evening of Friday, September 1, 2006, Brayden Blanda's symptoms became worse, and the following days his frequent diarrheal stools became grossly bloody.

3.6     The evening of Saturday, September 2, 2006, Brayden Blanda's mother rushed him to the emergency department at Cottonwood Hospital, where Brayden received intravenous

hydration and pain and anti-nausea medication. A stool sample was also secured from Brayden, which sample ultimately returned positive for *E. coli* O157:H7.

3.6     The next day, Sunday, September 3, 2006, Brayden Blanda's stool turned black, and his mother rushed him to Primary Children's Hospital in Salt Lake City. There, Brayden required additional intravenous hydration, and more lab-work and tests were done. Brayden was referred to a pediatric gastroenterologist for treatment, and Brayden is scheduled to undergo more treatment on September 18, 2006.

## IV. CAUSES OF ACTION

### Strict Liability—Count I

4.1     At all times relevant hereto, the defendants were manufacturers and sellers of the adulterated food product that is the subject of the action.

4.2     The adulterated food product that the defendants manufactured, distributed, and/or sold was, at the time it left the defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained *E. coli* O157:H7, a deadly pathogen.

4.3     The adulterated food product that the defendants manufactured, distributed, and/or sold was delivered to the plaintiffs without any change in its defective condition. The adulterated food product that the defendants manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by plaintiffs.

4.4     The defendants owed a duty of care to the plaintiffs to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The defendants breached this duty.

4.5   The defendants owned a duty of care to the plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendants breached this duty.

4.6   Plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendants manufactured, distributed, and/or sold.

### Breach of Warranty—Count II

4.7   The defendants are liable to the plaintiffs for breaching express and implied warranties that they made regarding the adulterated product that the plaintiffs purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, the defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food they prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

4.8   Plaintiffs allege that the *E. coli*-contaminated food that the defendants sold to plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

4.9   Plaintiffs allege that the *E. coli*-contaminated food that the defendants sold to plaintiffs was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

4.10   As a direct and proximate cause of the defendants' breach of warranties, as set forth above, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

### Negligence—Count III

4.11 The defendants owed to the plaintiffs a duty to use reasonable care in the manufacture, distribution, and sale of their food product, the breach of which duty would have prevented or eliminated the risk that the defendants' food products would become contaminated with *E. coli* O157:H7 or any other dangerous pathogen. The defendants breached this duty.

4.12 The defendants had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so, and were therefore negligent. The plaintiffs are among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.13 The defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure their respective employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but the defendants failed to do so and were therefore negligent.

4.14 The defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but the defendants failed to do so and were therefore negligent.

4.15 As a direct and proximate result of the defendants' acts and omissions of negligence, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

<u>Negligence Per Se—Count IV</u>

4.16 The defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the

requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq*).

4.17   The defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, and sale of food adulterated with *E. coli* O157:H7, a deadly pathogen.

4.18   As a direct and proximate result of conduct by the defendants that was negligent *per se*, the plaintiffs sustained injury and damages in an amount to be determined at trial.

## DAMAGES

4.19   The plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendants, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

The plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for judgment against the defendants as follows:

A.   Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiffs as a result of the defendants' conduct;

B.   Awarding plaintiffs their reasonable attorneys fees and costs, to the fullest extent allowed by law; and

C.     Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: May 1, 2007.

BATEMAN, GOODWIN & GARDNER

_____
Todd D. Gardner (#5953)
4120 South Highland Drive, Suite 100
Salt Lake City, Utah 84124
Telephone: (801) 424-3451
Facsimile: (801) 424-3429
Attorney for Plaintiffs